IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAVEN JENKINS | § § § | |
| Plaintiff | § § | Civil No. 4:19-cv-4883 |
| -v- | § § | |
| THE GEO GROUP, INC. | § § | |
| Defendant. | § § | |

PLAINTIFF RAVEN JENKINS' ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

The Geo Group, Inc. fired Raven Jenkins because she refused to violate the civil rights of ICE detainees in South Texas. While working for GEO, Jenkins was assigned to work in the law library. Federal law requires GEO to provide detainees with adequate access to the facility, as a failure to do so would violate the due process rights of the detainees, particularly detainees representing themselves because they cannot afford an attorney. In allocating library time, Jenkins followed the U.S. Immigration and Customs Enforcement Performance-Based National Detention Standards, which GEO was required to follow as a contractor of said agency. Management disapproved of Jenkins' adherence to the law and policies, which governed the facility. This led to them ordering Ms. Jenkins to reduce detainee access to the law library. Jenkins refused, informing management that the denial of access to the law library was a violation of the detainees' civil rights. When Jenkins opposed and reported actions violating the law and the civil rights of the detainees, GEO fired her.

Jenkins reported GEO's retaliatory termination and violation of the law to the Office of the Inspector General for the U.S. Department of Homeland Security. An investigation was opened. The investigation is still open, active, and ongoing.

GEO's actions violated the law and its contract with ICE.

# I
# PARTIES

1. Plaintiff Raven Jenkins is an individual who resides in Montgomery County, Texas.

2. Defendant, The GEO Group, Inc., is a Florida corporation doing business in the state of Texas. The GEO Group, Inc. can be served through its registered agent for process, Corporate Creations Network, Inc. at 5444 Westheimer, #1000, Houston, Texas 77056.

# II
# JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this complaint pursuant to 28 U.S.C. § 1331, with this action being brought under 41 U.S.C. § 4712, and being brought at this time pursuant to 41 U.S.C. § 4712(c)(2).

4. Venue is appropriate because the acts giving rise to this lawsuit occurred within the Southern District of Texas.

# III
# FACTS

5. Jenkins was hired by GEO as an Intelligence Officer in or around August 2018.

6. GEO is a private corporation that owns and operates privatized corrections, detention, and mental health treatment facilities.

7. GEO contracts with the U.S. federal government to oversee the operations and management of facilities on behalf of the Federal Bureau of Prisons, U.S. Marshals Service, and U.S. Immigration and Customs Enforcement.

8. Jenkins was hired to work at GEO's Montgomery County Processing Center, which is a facility GEO operates and manages on behalf of U.S. Immigration and Customs Enforcement.

9. The Montgomery County Processing Center is a Contract Detention Facility that houses ICE/ERO detainees.

10. Prior to joining GEO, Jenkins had been in the field of investigations for nearly ten years.

11. Shortly after beginning her employment with GEO, Assistant Warden Bridgett Bowers, directed Ms. Jenkins to report to the library for a new assignment.

12. Jenkins informed Ms. Bowers that she was neither hired nor trained to work in the law library. Nevertheless, Ms. Bowers insisted upon the assignment. Jenkins took her protests to both Warden Joe Smith and Regional Director James Black, separately. Director Black requested that Jenkins temporarily help them out in the law library.

13. Jenkins, though opposed, agreed to work the additional assignment as instructed.

14. Wanting to make sure she was in compliance with laws and regulations, Jenkins sought out Chief Angela Glaze, who was responsible for the staffing and operations of the library/law library at the Montgomery County Processing Center.

15. Chief Glaze provided no guidance, but simply instructed Jenkins to "assist and get it up and running."

16. Taking initiative, Jenkins then spoke with Teresa Merriam, the library/law library designee at GEO's Joe Corley Processing Center in order to obtain an idea of what was needed and expected from the library/law library designee.

17. Merriam advised Jenkins of the importance of law library access to detainees versus general library access.

18. Appropriately, Ms. Jenkins located the U.S. Immigration and Customs Enforcement Performance-Based National Detention Standards and developed a compliant schedule for the detainees' use of the law library.

19. The Purpose and Scope of Detention Standard 6.3 Law Libraries and Legal Materials states: "This detention standard protects detainees' rights by ensuring their access to courts, counsel and comprehensive legal materials." PBNDS, 6.3 Law Libraries and Legal Materials, I. Purpose and Scope.

20. In accordance with ICE 2011 PBNDS, GEO is to permit detainees access to the law library, legal materials, facilities, and equipment; have document copy privileges; and have the opportunity to prepare legal documents.

21. When requested and where resources permit, facilities shall provide detainees meaningful access to law libraries, legal materials, and related materials on a regular schedule and no less than 15 hours per week.

22. PBNDS, 6.3 Law Libraries and Legal Materials, V. Expected Practice, C. Hours of Operation states:

    Each facility administrator shall devise a flexible schedule that:

    1. permits *all detainees*, regardless of housing or classification, to use the law library on a regular basis;

    2. *enables maximum possible use* without interfering with the orderly operation of the facility (law library hours of operation shall generally be scheduled between official counts, meals and other official detention functions)[.] (Emphasis added.)

23. Unfortunately, management at GEO disapproved of the amount of law library time Jenkins provided to the detainees, alleging they were being given too much time.

24. Bowers instructed Jenkins to severely limit library time, even though the time being allotted did not interfere with the orderly and secure operation of the facility.

25. Following Bowers' review of the law library log the week prior, on or about October 29, 2018, Warden Randy Tate also gave Jenkins a directive to revise the library/law library schedule to reflect one hour of law library access to each dorm.  Further, Bowers instructed Ms. Jenkins to completely deny law library access to a segregated detainee.

26. These orders violated the law, and GEO's contract with ICE providing that it follow the regulations found in PBNDS, because they denied detainees meaningful access to law libraries, comprehensive legal materials and equipment.

27. Furthermore, these denials of access ultimately hindered detainees' efforts to pursue legal claims.

28. The schedule created by Ms. Jenkins had been working successfully for nearly 13 weeks, when she was suddenly ordered to restrict library access.

29. Jenkins informed management of the proper regulations to be applied to detainees' use of the law library.

30. Jenkins provided them with copies of the relevant segments of the PBNDS and informed management that the denial of access to the law library was a violation of the detainees' civil rights.

31. Yet, management held firm and insisted that, despite what the law required, library time be strictly limited.

32. Because of Jenkins' protests and opposition, on November 5, 2018, she was placed on administrative leave.

33. Subsequently, in an attempt to remedy this matter, that very day, Jenkins contacted Regional Director Black to provide an explanation and to once again outline the proper regulations regarding detainee use of the law library facilities.

34. Black did not respond.

35. GEO failed to take the appropriate action of reinstating Jenkins.

36. Instead, Jenkins' employment was terminated on or about December 18, 2018.

37. Any reasons GEO alleges for its termination of Jenkins is mere pretext.

38. GEO alleges that Jenkins failed to maintain proper federal security clearance. However, Jenkins had the proper security clearance. And, even before her employment with GEO, she had the required security clearance.

39. GEO alleges that Jenkins disobeyed direct orders and failed to enforce policy. However, the only orders and policy that were at issue related to Jenkins opposition to GEO violating the rights of detainees and its instructing Jenkins to take actions that were not in compliance with the PBNDS.

40. GEO alleges that Jenkins failed to promptly report a detainee's wrongdoing. However, that is blatantly false.

41. Jenkins filed a Complaint with the Office of the Inspector General for the U.S. Department of Homeland Security reporting that she had been fired in retaliation for whistleblowing and opposing abuses of civil rights and liberties of detainees at GEO's Montgomery County Processing Center.

42. The OIG opened an investigation into Jenkins' complaint.

43. The investigation is ongoing.

44. More than 210 days have lapsed since the filing of Jenkins' complaint.

45. No report or determination has yet been issued by the OIG.

46. All conditions precedent to the filing of this suit have been met.

## IV
## FIRST CAUSE OF ACTION: VIOLATION OF 41 U.S.C. § 4712

47. Defendant, The GEO Group, Inc., is a contractor and subcontractor of the federal government.

48. By severely limiting detainees' access to the law library, legal materials, facilities, and equipment, GEO was violating laws, rules and regulations related to a federal contract.

49. By severely limiting detainees' access to the law library, legal materials, facilities, and equipment, GEO engaged in the gross mismanagement of a federal contract.

50. By severely limiting detainees' access to the law library, legal materials, facilities, and equipment, GEO engaged in an abuse of authority relating to a federal contract.

51. Plaintiff reported the violation of law, rule, or regulation, the actions that were a gross mismanagement and abuse of authority, related to a federal contract to a management official or other employee of The GEO Group, Inc. who had the responsibility to investigate, discover, or address misconduct.

52. Plaintiff was fired for making that report.

## V
## JURY DEMAND

53. Plaintiff demands trial by jury and will tender the appropriate fee.

## VI
## DAMAGES

54. Plaintiff seeks all damages allowed under the law, including monetary relief like back pay, benefits, lost wages, and:

   (a) Plaintiff seeks an injunction prohibiting Defendants from engaging in unlawful practices.

   (b) Plaintiff seeks additional equitable relief as may be appropriate such as reinstatement, promotion, front pay, and court costs.

   (c) Plaintiff seeks compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

   (d) Plaintiff seeks exemplary damages.

   (e) Plaintiff seeks reasonable attorney's fees and costs including reasonable expert fees.

   (f) Plaintiff seeks pre and post judgment interest at the maximum rate allowed by law.

WHEREFORE, premises considered, Plaintiff respectfully prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff, and for such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

_/s/ Kalandra N. Wheeler_
Kalandra N. Wheeler* (Attorney-in-Charge)
Texas Bar No. 24051512
Southern Dist. Texas Bar No. 2944827
Robert J. Wiley*
Texas Bar No. 24013750
Southern Dist. Texas Bar No. 596499
*Board Certified Specialist, Labor and Employment Law, Texas Board of Legal Specialization

WILEY WHEELER, P.C.
1651 Richmond Avenue
Houston, Texas 77006
Telephone: (713) 337-1333
Facsimile: (713) 337-1334
kwheeler@wiley-wheeler.com

ATTORNEYS FOR PLAINTIFF